IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| UNITED STATES OF AMERICA | **Under Seal** |
| v. | Case No. 1:15-CR-180 |
| RAY EKOBENA, a/k/a "Pops," | 18 U.S.C. § 1028A (Aggravated Identity Theft) |
| STEFAN EKOBENA, a/k/a "Hot Lotto," | 18 U.S.C. § 1341 (Mail Fraud) |
| GANI COLE, a/k/a "Talls," | 18 U.S.C. § 1344 (Bank Fraud) |
| RODNEY HARDY, a/k/a "Philly," | 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud) |
| DEALLTO DAVIS, a/k/a "Money Bags," "Al," | 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) |
| JEROME JOHNSON, | 18 U.S.C. § 1957 (Money Laundering) |
| DEFENDANTS. | Forfeiture |

## INDICTMENT

JUNE 2015 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

1.      From on or about at least 2009, and continuing through the present, in the Eastern District of Virginia and elsewhere, the defendants, RAY EKOBENA, STEFAN

1

EKOBENA, GANI COLE, RODNEY HARDY, DEALLTO DAVIS, JEROME JOHNSON, and others known and unknown to the Grand Jury (the "Conspirators"), using the aliases stated in the caption above, aiding and abetting, and being aided and abetted by, others known and unknown to the Grand Jury, did knowingly and unlawfully engage in a conspiracy to defraud several financial institutions, to obtain money and funds from several financial institutions by means of false pretenses, representations, and promises, to unlawfully obtain and use the means of identification of others to further their unlawful schemes, and to launder the resulting proceeds ("the Conspiracy").

2.      As used in this Indictment, "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual.

3.      At all times relevant to this Indictment, the following financial institutions (the "Financial Institutions") did business in the Eastern District of Virginia and held deposits insured by the Federal Deposit Insurance Corporation (FDIC) or the National Credit Union Share Insurance Fund:

        a.  Bank of America Corporation

        b.  Citibank

        c.  BB&T Corporation

        d.  Educational Systems Federal Credit

        e.  GE Capital Commercial, Inc.

        f.  GE Capital Bank

        g.  Navy Federal Credit Union

        h.  PNC Bank, NA

    i.  SunTrust Bank

    j.  TD Bank, N.A.

    k.  Synchrony Bank

    l.  United Services Automobile Association (USAA)

    m.  USAA Federal Savings Bank

    n.  Wells Fargo Bank, N.A

## COUNT 1
### (Conspiracy)

4.    The Grand Jury re-alleges and incorporates paragraphs 1 through 3 as if fully set forth herein.

5.    From at least 2009, and continuing until the present, in the Eastern District of Virginia and elsewhere, the Conspirators did knowingly and intentionally, combine, conspire, confederate, and agree, to gain unlawful access to means of identification, in violation of 18 U.S.C. § 1028A, and to use the stolen means of identification during and in relation to a scheme to defraud the Financial Institutions and other financial institutions, and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, the Financial Institutions and other financial institutions, by means of false and fraudulent pretenses, representations, or promises, in violation of 18 U.S.C. § 1344. At all relevant times, this scheme was conducted with the intent to defraud.

*Manner and Means*

6.    The Conspirators worked together to accomplish a scheme known as "Card-Cracking," the goal of which is to obtain control of bank accounts to be used to deposit fraudulent checks and to withdraw the resulting funds before the bank notices the fraud.

3

7.     As part of the conspiracy, the Conspirators obtained information about legitimate bank accounts and bank customers and shared this information with one another. The Conspirators used the compromised account information, including the real names of business and individuals, real bank account numbers, and real routing numbers, to print fraudulent checks.

8.     The Conspirators made the fraudulent checks payable to bank accounts which the Conspiracy fraudulently controlled (the "Payee Accounts"). To obtain control of these accounts, the Conspiracy employed "Recruiters," whose job it was to recruit people to provide their name, personal identification number ("PIN"), and other personal identifying information, in exchange for a cash payment. The Recruiters did most of their recruiting on Instagram and other social media websites. On Instagram, for instance, people looking to buy or sell debit cards and associated information to be used for fraudulent purposes connect using the hashtag "#checks."

9.     The Conspirators also obtained control of Payee Accounts by opening bank accounts using stolen means of identification, including names, dates of birth ("DOB") and Social Security Numbers ("SSN").

10.     After depositing fraudulent checks into a Payee Account, the Conspirators would purchase United States Postal Money Orders ("PMOs") and/or make cash withdrawals or purchases with the use of debit cards linked to the Payee Account. This Indictment will refer to PMOs purchased with funds made available by depositing fraudulent checks as "Fraudulently-Obtained PMOs."

11.     Also as part of the Conspiracy, the Conspirators stole real checks that were made payable to businesses and/or charitable institutions. The Conspirators would open bank

4

accounts in the name of the business or charitable institution to whom the stolen check was made out. The purpose of this was to allow the Conspirators to deposit the stolen checks into a bank account they controlled and then use the funds before the fraud could be discovered.

12. Members of the Conspiracy played various roles at various times, including, but not limited to, the following:

    a. RAY EKOBENA, a/k/a "Pops," was the leader of the Conspiracy. He developed the scheme, researched relevant bank policies, and educated subordinates about how to run the scheme effectively and avoid law enforcement. RAY EKOBENA printed fraudulent checks using check-printing software on his computer and account information that he and his co-conspirators obtained from various sources. RAY EKOBENA and his brother, STEFAN EKOBENA, obtained, and helped other Conspirators obtain, false and fraudulent identifications. The Conspirators would use these identifications to cash, spend, and deposit Fraudulently-Obtained PMOs in a manner that was not easily traceable to them. The Conspirators also used these false and fraudulent identifications to set up bank accounts to be used as "Payee Accounts," in which to deposit fraudulent checks. Although RAY EKOBENA preferred to mitigate risk by having others deposit fraudulent checks and Fraudulently-Obtained PMOs, he also made such deposits himself.

    b. STEFAN EKOBENA, a/k/a "Hot Lotto," is RAY EKOBENA's younger brother. STEFAN EKOBENA printed fraudulent checks, obtained false identifications and/or assisted RAY EKOBENA in doing the same. STEFAN EKOBENA

opened bank accounts using stolen identities and deposited fraudulent checks that he made with the assistance of RAY EKOBENA.

c. ALLEN LAMIN, a/k/a "Legend," a co-conspirator charged in an information filed in the U.S. District Court for the Eastern District of Virginia, is a long-time friend of both EKOBENAS, having grown up with them in Brooklyn Park, Minnesota. In order to reduce his exposure to potential criminal investigations, RAY EKOBENA used LAMIN as a middleman between himself and the Recruiters. LAMIN would receive debit cards and associated account information from the Recruiters to provide to RAY EKOBENA and/or provide Recruiters with fraudulent checks manufactured by RAY EKOBENA. In exchange, LAMIN took a share of the proceeds from the fraud.

d. GANI COLE, a/k/a "Talls," became an associate of the EKOBENAS after they moved to the Washington, D.C. area. COLE also served as a middleman between the Recruiters and RAY EKOBENA, playing a similar role to LAMIN, as described above. In addition, COLE received, possessed, cashed, and spent Fraudulently-Obtained PMOs that were provided to him by members of the Conspiracy.

e. RODNEY HARDY, a/k/a "Philly," is also a longtime friend of both EKOBENAS. HARDY became close with the EKOBENAS after he moved to Minnesota. He then accompanied the EKOBENAS when they moved to the Washington, D.C. area. HARDY opened bank accounts under false names, deposited checks printed with the assistance of the EKOBENAS, and received and used Fraudulently-Obtained PMOs provided by the Conspiracy.

6

f. DEALLTO DAVIS, a/k/a "Money Bags," a/k/a "Al," became an associate of the EKOBENAS after they moved to the Washington, D.C. area. He furthered the conspiracy by making "runs" at the request of RAY EKOBENA. These "runs" included receiving debit cards from Recruiters and cashing Fraudulently-Obtained PMOs.

g. JEROME JOHNSON worked as a Recruiter for the Conspiracy from about 2010 through about 2014. He recruited people via social media websites such as Instagram to provide him their debit cards and associated account information. He would then obtain fraudulent checks printed by RAY EKOBENA, either directly or through middlemen such as LAMIN or COLE, and deposit those checks into the debit card owner's account. Alternatively, JOHNSON would provide the debit cards to EKOBENA in exchange for a fee. JOHNSON made over $100,000.00 for his role in the Conspiracy.

*Overt Acts*

The Conspiracy included, among others, the following overt acts:

Fraud Using M.K.'s Identity

13.     On or about November 23, 2013, RAY EKOBENA obtained an identification from the District of Columbia Department of Motor Vehicles ("DC DMV") under the name "M.K.,"[1] using the SSN and DOB of the real M.K. (the "M.K. ID"). The M.K. ID bears a photo of RAY EKOBENA, the name M.K., and the Identification # 3245691.

14.     On or about January 9, 2014, RAY EKOBENA opened an account at SunTrust Bank in the name M.K., using the M.K. ID, as well as the same SSN that RAY

---

[1] The individuals whose identities were stolen will only be identified by their initials in order to protect their privacy.

EKOBENA used to obtain the M.K. ID.   RAY EKOBENA subsequently deposited multiple fraudulent checks into this account at multiple SunTrust locations, including one in Dumfries, Virginia, within the Eastern District of Virginia.

15.    On or about January 18, 2014, RAY EKOBENA opened a Citibank Account in the name of M.K., using the M.K. ID.   At the time of the account opening, RAY EKOBENA deposited four Fraudulently-Obtained PMOs into the account.

16.    On or about April 1, 2014, during a traffic stop conducted by Virginia State Police, within the Eastern District of Virginia, RAY EKOBENA identified himself as M.K. and provided a DC identification under the name M.K. to the officer.

Fraud Using O.A.'s Identity

17.    On or about March 28, 2014, ALLEN LAMIN, acting with the assistance of RAY EKOBENA, applied for an identification from the DC DMV under the name "O.A.," using the SSN and DOB of the real O.A., a resident of the Eastern District of Virginia. Shortly thereafter, the DC DMV issued LAMIN Identification # 3294743 under the name "O.A." (the "O.A. ID"), bearing the photo of LAMIN.

18.    On or about June 19, 2014, LAMIN used the O.A. ID to open an account at Citibank.   On or about August 13-15, 2014, LAMIN deposited multiple fraudulent PNC Cashier's Checks into the account.   These checks were manufactured by RAY EKOBENA. LAMIN withdrew the funds made available by these fraudulent checks by, for instance, making purchases within the Eastern District of Virginia with a debit card associated with the account.

19.    During a traffic stop on the Baltimore-Washington Parkway on September 8, 2014, LAMIN identified himself to law enforcement as O.A. and provided the officer with the O.A. ID.

## Fraud Using T.Y.'s Identity

20.    On or about August 18, 2010, STEFAN EKOBENA opened an account, and aided and abetted the opening of an account, under the name "T.Y." (the "T.Y. ACCOUNT") at a TD Bank location in Arlington, Virginia, within the Eastern District of Virginia.  Subsequently, STEFAN EKOBENA deposited, caused the deposit, and aided and abetted the deposit, of several fraudulent checks into the T.Y. ACCOUNT, at various TD Bank locations.  For example, on or about August 19, 2010, STEFAN EKOBENA deposited a fraudulent check from victims E.B. and K.L. in the amount of $9,000.00 into the T.Y. ACCOUNT at a TD Bank branch located in Washington, D.C.

## Fraud Using D.C.'s Identity

21.    On or about October 24, 2010, RODNEY HARDY deposited a fraudulent check from non-profit organization N.L. in the amount of $9,200.00 into the account of D.C., which was fraudulently controlled by members of the Conspiracy.

## Fraud Using J.R.'s Identity

22.    On or about November 17, 2010, RODNEY HARDY opened an account in the name J.R. (the "J.R. ACCOUNT") at a TD Bank branch located in Washington, D.C. HARDY and his co-conspirators subsequently deposited several fraudulent checks into the J.R. ACCOUNT at several TD Bank locations, including a location in Arlington, Virginia, within the Eastern District of Virginia.

9

## Fraud Using the name "Warren Comeaux"

23.      During a traffic stop in South Carolina on October 24, 2013, law enforcement recovered three false Pennsylvania driver's licenses bearing the photo of STEFAN EKOBENA with the false names Rico Avery, Malik Avery, and Kris Besse, and one false Pennsylvania driver's license bearing a photo of GANI COLE and the false name Warren Comeaux.   Law enforcement also recovered several Fraudulently-Obtained PMOs during this stop.

24.      On or about August 21, 2013, COLE, or a co-conspirator, purchased PMO #21274045560 for $400.00 in Washington, D.C., with a Bank of America debit card ending in 0917, an account which was later closed due to fraud. On the same day, COLE made this PMO payable to "Warren Comeaux" and deposited it into a USAA account.

25.      On or about August 28, 2013, COLE, using the name "Warren Comeaux," used three Fraudulently-Obtained PMOs to pay for a stay at the W Atlanta Midtown hotel in Atlanta, Georgia.

26.      On or about April 23, 2013, COLE cashed a Fraudulently-Obtained PMO in Kennesaw, Georgia using his real Maryland driver's license.

## Fraud Against the Children's National Medical Center

27.      On or about August 1, 2013, RAY EKOBENA applied for an identification from the DC DMV under the name "Y.B.," using the SSN and DOB of the real Y.B.  Shortly thereafter, the DC DMV issued RAY EKOBENA Identification # 3188314 under the name Y.B. (the "Y.B. ID"), bearing the photo of RAY EKOBENA.

28.      In or shortly after July 16, 2013, members of the Conspiracy stole two checks which were made payable to Children's National Medical Center (CNMC), a pediatric

health care provider in Washington, D.C., that provides cancer, trauma, cardiac, and critical care.

29.     In order to fraudulently obtain the funds that were intended for the CNMC, RAY EKOBENA opened bank accounts in the name of the "Children's National Medical Center" at TD Bank and PNC Bank (the "TD Bank CNMC account" and the "PNC Bank CNMC account"). Both accounts listed "Y.B." as an authorized representative of the CNMC. The TD Bank CNMC account was opened using the YB ID and the same SSN and DOB that RAY EKOBENA used to obtain the YB ID.

30.     Upon opening the TD Bank CNMC account on or about August 5, 2013, RAY EKOBENA deposited a check payable to CNMC for $85,120.00.

31.     On or about August 12, 2013, RAY EKOBENA, or one of his co-conspirators, deposited a check payable to CNMC for $138,450.00 into the PNC CNMC account.

<u>Cashing Fraudulently-Obtained PMOs</u>

32.     DEALLTO DAVIS cashed several Fraudulently-Obtained PMOs provided to him by members of the Conspiracy. For instance,

a. On or about July 24, 2013, DAVIS cashed PMO #21170277033 for $250.00. This PMO was purchased on or about July 20, 2013, with a Bank of America debit card ending in 5121, an account subsequently closed due to fraud.

b. Also on or about July 24, 2013, DAVIS cashed PMO #21170264995 for $500.00. This money order was purchased on or about July 20, 2013, with a Bank of America debit card ending in 7775, an account subsequently closed due to fraud.

c. On or about October 22, 2013, DAVIS cashed PMO #20952619637 for $1000.00. This money order was purchased on or about October 19, 2013, with a Bank of America debit card ending in 2298, an account subsequently closed due to fraud.

### Use of Fraudulently-Obtained PMOs for Luxury Purchases

33. The Conspirators used PMOs obtained from their fraudulent scheme to fund their lavish lifestyles by, for instance, purchasing luxury cars and paying rent at luxury apartment buildings.

34. For instance, on or about September 26, 2011, RAY EKOBENA and STEFAN EKOBENA purchased a 2007 BMW automobile with Vehicle Identification Number ("VIN") ending in 2875 for $39,825.03 from Radley Automotive Group located in Fredericksburg, Virginia, within the Eastern District of Virginia, using ten Fraudulently-Obtained PMOs, among other sources, as payment.

35. Between about March 9-11, 2013, STEFAN EKOBENA purchased a car at Queen's Auto Mall in Richmond Hill, New York, using several Fraudulently-Obtained PMOs, among other sources, as payment.

36. On or about April 8, 2014, RAY EKOBENA, or his co-conspirators, purchased a 2007 Mercedes Benz automobile with VIN ending in 5191 from Unique Auto Import car dealership located in Dumfries, Virginia, within the Eastern District of Virginia, using Fraudulently-Obtained PMOs. This vehicle was purchased using the name M.K. and the same SSN and DOB that RAY EKOBENA had used to obtain the M.K. ID.

37. From at least January 2013 until at least June of 2013, RAY EKOBENA paid rent at Park Place DC, at 850 Quincy St., NW, Washington, D.C., in part by using Fraudulently-Obtained PMOs. RAY EKOBENA, using the name "Ray Mafani," signed

the lease on or about June 5, 2012, along with his co-tenant and then-girlfriend. From January to June 2013, eleven Fraudulently-Obtained PMOs from seven different bank accounts closed due to fraud were used as rental payment to Park Place DC for ·EKOBENA's apartment.

(All in violation of 18 U.S.C. § 1349)

**Counts 2-5**
(Bank Fraud)

38.     The Grand Jury re-alleges and incorporates paragraphs 1 through 37 as if fully set forth herein.

39.     On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, as named in each count below, each date constituting a separate count, the identified defendant devised a scheme and artifice to defraud the Financial Institutions listed in each count and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, those Financial Institutions, by means of false or fraudulent pretenses, representations, or promises, with the intent to defraud, or aid and abet others in doing the same, in violation of 18 U.S.C. § 1344.

40.     The defendants did knowingly execute and attempt to execute the scheme and artifice as follows:

| Count | Defendant(s) | Description |
|---|---|---|
| 2 | S. EKOBENA | Opened or caused to be opened an account in the name of victim T.Y. (the "T.Y. Account") on or about August 18, 2010, at a TD Bank location in Arlington, Virginia, within the Eastern District of Virginia. S. EKOBENA then caused the deposit of fraudulent check from victims E.B. and K.L. in the amount of $9,000.00 into the T.Y. account, on or about August 19, 2010. |
| 3 | HARDY | Caused the deposit, or aided and abetted the deposit, of a fraudulent check from victim business D.G. in the amount $8,980.76 into in an account under the name J.R. on or about |

13

|   |            |                                                                                                                                                                                                            |
|---|------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   |            | November 18, 2010, at a TD Bank location in Arlington, Virginia, within the Eastern District of Virginia.                                                                                                     |
| 4 | R. EKOBENA | Caused deposit of fraudulent check from victim business A.S. for $3,408.11 on or about April 8, 2014, into account in the name of M.K., at a SunTrust location in Dumfries, Virginia, within the Eastern District of Virginia. |
| 5 | R. EKOBENA | Caused deposit of stolen check in the amount of $85,120.00 from victim nonprofit organization I.H.S., with headquarters within the Eastern District of Virginia, which was made payable to victim nonprofit CNMC. |

(All in violation of 18 U.S.C. § 1344 and 2)

### Count 6
### (Bank Fraud)

41.    The Grand Jury re-alleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

42.    On or about November 25, 2014, RAY EKOBENA engaged in a scheme to defraud GE Capital Commercial, Inc. and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, GE Capital Commercial, Inc., by means of false or fraudulent pretenses, representations, or promises, with the intent to defraud, in violation of 18 U.S.C. § 1344.

43.    At all relevant times, GE Capital Commercial, Inc., and its processor and successor entities, was a "financial institution," within the meaning of 18 U.S.C. § 1344 because, inter alia, it held funds insured by the FDIC.

44.    Specifically, on or about November 25, 2014, RAY EKOBENA, using the name and other means of identification of C.T., mailed or caused to be mailed a loan application for financing to purchase a 2011 Freightliner Cascadia Series tractor-trailer ("TRACTOR-TRAILER I") from Arrow Truck Sales Inc. in Maple Shade, New Jersey

for $77,649.00.  The fraudulent loan application was notarized at a UPS Store located in Annandale, Virginia, within the Eastern District of Virginia.

45.     RAY EKOBENA recruited a truck driver via the Internet and paid him $400 to pick up TRACTOR-TRAILER I from Arrow Truck Sales Inc. in Maple Shade, New Jersey and deliver it to RAY EKOBENA at a location in Springfield, Virginia, within the Eastern District of Virginia.

## Count 7
### (Bank Fraud)

46.     The Grand Jury re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein.

47.     From on or about January 26, 2015 and continuing until on or about February 19, 2015, RAY EKOBENA engaged in a scheme to defraud GE Capital Commercial, Inc. and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, GE Capital Commercial, Inc., by means of false or fraudulent pretenses, representations, or promises, with the intent to defraud, in violation of 18 U.S.C. § 1344.

48.     Specifically, on or about January 29, 2015, RAY EKOBENA, using the name and other means of identification of M.M., mailed or caused to be mailed a loan application for financing to purchase a 2011 Freightliner Cascadia Series tractor-trailer ("TRACTOR-TRAILER II") from Arrow Truck Sales Inc. in Maple Shade, New Jersey for $71,649.00.  The fraudulent loan application was notarized at a UPS Store located in Annandale, Virginia, within the Eastern District of Virginia.

49.     RAY EKOBENA hired the same truck driver referenced in paragraph 45 and agreed to pay him $400 to pick up TRACTOR-TRAILER II from Arrow Truck Sales Inc.

in Maple Shade, New Jersey and deliver it to RAY EKOBENA at a location in Springfield, Virginia, within the Eastern District of Virginia.

50.     On or about February 18, 2015, RAY EKOBENA purchased train tickets from Amtrak for the truck driver to travel from BWI–Thurgood Marshall Airport in Maryland to Cherry Hill, New Jersey on February 19, 2015, to pick-up TRACTOR-TRAILER II from Arrow Truck Sales in New Jersey and deliver it to RAY EKOBENA.

(All in violation of 18 U.S.C. § 1344 and 2)

**Count 8**
(Mail Fraud)

51.     The Grand Jury re-alleges and incorporates paragraphs 1 through 50 as if fully set forth herein.

52.     Beginning in or about November 2014, and continuing into December 2014, RAY EKOBENA devised and executed, with the intent to defraud, a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises that were material, in the Eastern District of Virginia and elsewhere.  In advancing, furthering, and carrying out this scheme, RAY EKOBENA used and caused to be used the mails or a private interstate carrier.

53.     Specifically, on or about December 1, 2014, RAY EKOBENA, using without authorization the name and other means of identification of J.M., signed and caused to be notarized, in Falls Church, Virginia, within the Eastern District of Virginia, a Transfer of Interest agreement which transferred to J.M. the interest in a lease of a 2012 Mercedes-Benz SLSC automobile.

·54.    By signing lease transfer documents as J.M. and making other false representations that he was J.M. or the authorized representative of J.M., RAY EKOBENA obtained unlawful possession of the 2012 Mercedes-Benz SLSC automobile.

(All in violation of 18 U.S.C. § 1341 and 2)

### Counts 9-16
(Aggravated Identity Theft)

55.    The Grand Jury re-alleges and incorporates paragraphs 1 through 54 as if fully set forth herein.

56.    On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, as named below in each count, the identified defendant did knowingly transfer, posses, and use, without lawful authority, a means of identification of another person, as alleged in each count below, during and in relation to the commission of a felony enumerated in Title 18, United States Code, Section 1028A(c), specifically, bank fraud and attempted bank fraud in violation of 18 U.S.C. § 1344 and conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, all in violation of 18 U.S.C. § 1028A:

| ·Count | Defendant | Description |
|---|---|---|
| 9 | HARDY | Unlawfully used a means of identification of another, specifically D.C., during and in relation to a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, as alleged in Count 1. |
| 10 | S. EKOBENA | Unlawfully used a means of identification of another, specifically T.Y., during and in relation to a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, as alleged in Count 1, and the commission of bank fraud, in violation of 18 U.S.C. § 1344, as alleged in Count 2. |
| 11 | HARDY | Unlawfully used a means of identification of another, specifically J.R., during and in relation to a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, as alleged in Count 1, and the commission of bank fraud in violation of |

| | | 18 U.S.C. § 1344, as alleged in Count 3. |
|---|---|---|
| 12 | R. EKOBENA | Unlawfully used a means of identification of another, specifically M.K. during and in relation to a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, as alleged in Count 1, and the commission of bank fraud in violation of 18 U.S.C. § 1344, as alleged in Count 4. |
| 13 | R. EKOBENA | Unlawfully used a means of identification of another, specifically Y.B. during and in relation to a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, as alleged in Count 1, and the commission of bank fraud in violation of 18 U.S.C. § 1344, as alleged in Count 5. |
| 14 | R. EKOBENA | Unlawfully used a means of identification of another, specifically C.T., during and in relation to the commission of bank fraud in violation of 18 U.S.C. § 1344, as alleged in Count 6. |
| 15 | R. EKOBENA | Unlawfully used a means of identification of another, specifically M.M., during and in relation to the commission of bank fraud, in violation of 18 U.S.C. § 1344, as alleged in Count 7. |
| 16 | R. EKOBENA | Unlawfully used a means of identification of another, specifically J.M., during and in relation to the commission of bank fraud, in violation of 18 U.S.C. § 1341, as alleged in Count 8. |

(All in violation of 18 U.S.C. § 1028A and 2)

### Count 17
(Conspiracy to Commit Money Laundering)

57.     The Grand Jury re-alleges and incorporates paragraphs 1 through 56 as if fully set forth herein.

58.     From in or about at least 2009, and continuing through the present, in the Eastern District of Virginia and elsewhere, RAY EKOBENA, STEFAN EKOBENA, ALLAN LAMIN, GANI COLE, RODNEY HARDY, DEALLTO DAVIS, JEROME JOHNSON, and others known and unknown to the Grand Jury ("the Conspirators"), did knowingly and intentionally, combine, conspire, confederate, and agree, with each other and with other persons known and unknown to the Grand Jury, to commit an offense against the United States in violation of 18 U.S.C. § 1956, to wit, to conduct or attempt to conduct

18

financial transactions which in fact involved the proceeds of specified unlawful activity within the meaning of 18 U.S.C. § 1956(c)(7), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B).

*Manner and Means*

59.     The Conspirators, knowing that the Fraudulently-Obtained PMOs represented criminally-derived property and the proceeds of unlawful activity, engaged in a variety of financial transactions designed to conceal the nature, location, source, ownership, or the control of those proceeds.

60.     In particular, under the direction of RAY EKOBENA, members of the Conspiracy were aware that Fraudulently-Obtained PMOs could be traced to those who cash, deposit, or use them. Accordingly, the Conspirators developed a number of methods to avoid such exposure by, for instance, cashing Fraudulently-Obtained PMOs using false or stolen identifications, paying others to cash Fraudulently-Obtained PMOs under their real names, using false or stolen identifications to open bank accounts in which to deposit Fraudulently-Obtained PMOs, making purchases with Fraudulently-Obtained PMOs using false or stolen identifications, and renting apartments using false or stolen identifications and then paying rent using Fraudulently-Obtained PMOs.

*Overt Acts*

61.     As stated in paragraph 15 above, on or about January 18, 2014, RAY EKOBENA opened an account at Citibank using the stolen means of identification of M.K. and

19

deposited several Fraudulently-Obtained PMOs into that account.  RAY EKOBENA, or his co-conspirators, subsequently made several purchases within the Eastern District of Virginia with a debit card linked to that account, using funds made available by the deposit of Fraudulently-Obtained PMOs.

62.     As stated in paragraph 36 above, on or about April 8, 2014, RAY EKOBENA purchased a 2007 Mercedes Benz automobile at Unique Auto Import car dealership in Dumfries, Virginia, within the Eastern District of Virginia, using the stolen means of identification of M.K. and paying with Fraudulently-Obtained PMOs.

63.     As stated in paragraph 37 above, from at least January 2013 until at least June 2013, RAY EKOBENA paid rent at Park Place DC, at 850 Quincy St. NW, Washington, D.C., under the false name "Ray Mafani," in part by using Fraudulently-Obtained PMOs.

64.     As stated in paragraph 24 above, on or about August 21, 2013, GANI COLE deposited a Fraudulently-Obtained PMO into a USAA account under the false name "Warren Comeaux."

65.     As stated in paragraph 25 above, on or about August 28, 2013, GANI COLE, using the false name "Warren Comeaux," paid for a stay at the W Atlanta Midtown hotel in Atlanta, Georgia, using Fraudulently-Obtained PMOs.

66.     As stated in paragraph 32 above, DEALLTO DAVIS cashed multiple Fraudulently-Obtained PMOs on behalf of the Conspiracy.

(All in violation of 18 U.S.C. § 1956(h))

**Count 18**
(Money Laundering)

67.     The Grand Jury re-alleges and incorporates paragraphs 1 through 66 as if fully set forth herein.

68.     On or about September 26, 2011, in the Eastern District of Virginia and elsewhere, RAY EKOBENA did knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity within the meaning of 18 U.S.C. § 1956(c)(7), and in one of the circumstances set forth in 18 U.S.C. § 1957(d), specifically, that the offense took place within the United States, in violation of 18 U.S.C. § 1957(a).

69.     Specifically, as stated in paragraph 34 above, on or about September 26, 2011, RAY EKOBENA purchased a 2007 BMW automobile for $39,825.00 from Radley Automotive Group in Fredericksburg, Virginia, within the Eastern District of Virginia, using over $10,000.00 in criminally-derived proceeds.

(All in violation of 18 U.S.C. § 1957(a))

## Notice of Forfeiture

1.     The allegations contained in Counts One through Nineteen of this Indictment are hereby alleged and incorporated by reference for the purpose of alleging forfeiture.

2.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the United States of America gives notice to the Defendants that, in the event of a conviction of any of the offenses charged in Counts 1 through 19 of this Indictment, the United States intends to forfeit the property further described in this NOTICE OF FORFEITURE.

3.     A defendant who is convicted of an offense in violation of 18 U.S.C. § 1341, 1344, 1956, or 1957, or a conspiracy to violate any of these provisions, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a) and 28 U.S.C. § 2461(c),

any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

    4.    The property to be forfeited includes, but is not limited to, the following:

    a.    TRACTOR-TRAILER I, further described above;

    b.    The 2012 Mercedes Benz SLS AMG, gray in color, with VIN ending in 9290 with Montana registration 301308B, further described above;

    c.    The 2007 BMW automobile with VIN ending in 2875, further described above;

    d.    The 2007 Mercedes Benz automobile with VIN ending in 5091, further described above;

    e.    A 2012 Audi A7 automobile with VIN ending in 1934; and

    f.    A 2012 Porsche Panamera, gray in color, with VIN ending in 8299 with Minnesota registration 769NRY.

    5.    If any of the property described above, as a result of any act or omission of any defendant,

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third party;

    c.    Has been placed beyond the jurisdiction of the court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States

Code, Sections 982(b)(1) and Title 28, United States Code, Section 2461(c).

(All pursuant to 18 U.S.C. § 982 and 28 U.S.C. § 2461(c))

A TRUE BILL:

**Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office**

_____
Foreperson of the Grand Jury

DANA J. BOENTE
UNITED STATES ATTORNEY

_____
Kellen S. Dwyer
·Assistant United States Attorney

Joseph Longobardo
Special Assistant United States Attorney (LT)

23